**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

IN RE CIVIL INVESTIGATIVE DEMAND           No. 1:23-mc-0023 MIS/DLM
No. DNM 23-02,

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Noble Sales Co., Inc. (Noble) operated a supply store at the Cannon Air Force Base (CAFB) in New Mexico. Pursuant to its contract with CAFB, Noble was responsible for procuring goods and services necessary to maintain CAFB. Petitioner Sara Sanchez (Sanchez) worked at Noble for seven years. Sanchez played a key role in soliciting quotes from third party vendors and submitting the quotes on behalf of Noble to Government officials for consideration.

Since at least September 2016, the United States Attorney's Office (USAO) has been investigating Noble for allegedly providing fraudulent quotes to the Government in violation of the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733. On August 9, 2022, Sanchez gave oral testimony relevant to that investigation pursuant to a Civil Investigative Demand (CID) issued by the USAO. Sanchez's testimony prompted the USAO to investigate further and learn new information about Noble's alleged misconduct. On June 20, 2023, the USAO issued a second CID to Sanchez, which requires her to appear and give oral testimony on the new information and clarify her testimony from 2022. Sanchez believes that this second CID is an illegitimate use of the FCA and asks the Court to set aside the CID. The United States asks the Court to enforce the CID and compel Sanchez to provide testimony.

Having considered the record, submissions of counsel, and relevant law, the Court recommends that Sanchez's Petition to Set Aside a Second Civil Investigative Demand for her

Oral Testimony (Doc. 1) be DENIED and the United States' Cross-Petition to Enforce Civil Investigative Demand DNM 23-02 (Doc. 7) be GRANTED.[1]

## I.    Factual Background

Noble previously operated the Contractor Operated Civil Engineer Supply Store (the Supply Store) at CAFB. (*See, e.g.*, Doc. 1-3 at 1–4.[2]) "The Supply Store functions as a supply and materials source for the 27th Special Operations Civil Engineer Squadron" at CAFB. (Doc. 6 at 2.) The Squadron procures products and materials from the Supply Store, which Noble supplies through contracts with third-party vendors. (*See id.*) Noble's contract required it to provide the Government with quotes for products and materials that adhered to a set of criteria. (*See id.*) For higher-priced purchases, Noble secured competitive quotes, which Government officials reviewed and made decisions on based on information that Noble provided. (*Id.*) For lower-priced purchases, Noble determined prices based on market conditions. (*Id.*) "During Noble's tenure at the Supply Store, it handled more than 38,000 . . . transactions for the Air Force." (*Id.* (citing Doc. 6-1 ¶ 11).)

At some point in or before September 2016, the USAO initiated an investigation into Noble under the FCA "pursuant to a direct referral from the Air Force Office of Special Investigations." (Doc. 6-1 ¶ 3; *see also* Doc. 1-1 at 7.) This investigation, which remains active, is based on allegations that Noble "submitted fake or fraudulent quotes from third part[y vendors] to the United States and falsely represented the quotes were accurate and complied with" Noble's contracts. (*See* Docs. 1-1 at 1; 7 ¶ 6.)

---

[1] United States District Judge Margaret I. Strickland entered an Order of Reference on August 22, 2023, referring this case to the undersigned magistrate judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 3.)

[2] The Court will refer to the exhibits using both the CM/ECF labeling and pagination. For example, what Sanchez refers to as Exhibit 10, the Court cites as Doc. 1-3 at 1–4.

Sanchez worked for Noble from 2013 through 2020. (*See* Doc. 1-1 at 37.) From 2013 through 2015 she was a purchasing agent, and from 2015 through 2020 she was a store manager. (*See* Doc. 1-2 at 14:1–17:23.) As purchasing agent, she was responsible for sourcing materials for the government. (*Id.* at 14:6–13.) As store manager, Sanchez supervised the purchasing agents and ensured that Noble was complying with its contracts. (*See id.* at 15:16–17:14.) Cunniff asserts that he has "extensively reviewed" 250,662 documents that Noble produced pursuant to the investigation. (Doc. 6-1 ¶ 10.) "Sanchez is identified as the custodian for 237,999 of the documents . . . ." (*Id.*)

In September 2016, an AUSA first contacted Sanchez about the investigation. (*See* Doc. 1-1 at 5.) Sanchez's attorney, Gregg Fallick, notified the AUSA of his representation and forwarded a letter in support of Sanchez from her primary contact at CAFB. (*See id.* at 5, 9–13.) More than five years passed with no further inquiries to Sanchez. (*See* Doc. 1 at 4.)

On an unknown date in or before April 2022, Sean Cunniff, an Assistant United States Attorney and the lead attorney for the Noble FCA investigation, contacted Sanchez through Fallick to obtain her statement. (*See* Doc. 1-1 at 14.) On April 7, 2022, Siji Moore, a trial attorney with the Department of Justice Fraud Section, also contacted Fallick about interviewing Sanchez. (*Id.* at 19.) Fallick asked Moore to clarify whether Sanchez was the target of a criminal fraud claim. (*Id.* at 18.) Moore responded that he was "interested in Noble, not Ms. Sanchez individually." (*Id.* at 17.) Because "Sanchez has information about certain business practices at Noble[,]" Moore "view[ed] her as a witness in [his] investigation" into Noble. (*Id.* at 17.) Ultimately, Cunniff interviewed Sanchez; Moore did not. (*See* Doc. 1-2 at 1.)

On July 12, 2022, United States Attorney Alexander Uballez issued a CID to Sanchez. (*See* Doc. 6-6 at 2–3.) The CID required Sanchez to provide oral testimony under oath regarding the

Noble investigation. (*See id.* at 2.) In the weeks leading up to her August 9, 2022 Statement (*see* Doc. 1-2 at 1), Fallick and Cunniff continued to communicate regarding Sanchez's testimony (*see, e.g.*, Doc. 1-1 at 25–38. Sanchez lists four issues she experienced related to her 2022 testimony.

First, she summarily asserts[3] that the attorneys agreed she could have Noble's attorney, Kristen Jones, present. (*See* Docs. 1 at 5; 1-1 at 30.) Cunniff disagrees and asserts that although "the United States considered [the] request[,]" he "did not agree that [Jones] would be permitted to attend." (*See* Doc. 6-1 ¶ 13; *see also* Doc. 1-1 at 29.)

Second, Sanchez states that Cunniff did not provide all the exhibits he intended to question her about in advance of her testimony. (*See* Docs. 1 at 5, 7; 1-1 at 30.) Cunniff asserts that he gave Sanchez 42 documents and at least one 2014 Memorandum for the Record (MFR) prepared by Government contracting officials prior to the 2022 Statement. (Doc. 6-1 ¶¶ 14–15 (citing Docs. 6-9–12).)

Next, Sanchez contends that it was important to her that Cunniff not ask questions relating to matters within the five-year criminal statute of limitations; that is, matters post-dating August 8, 2017. (Doc. 1 at 6 (citing Doc. 1-1 at 28).) Thus, when Cunniff asked Sanchez questions about transactions post-dating August 8, 2017, Fallick advised her not to respond. (*See* Doc. 1-2 at 46:23–48:19.) Finally, Sanchez states that Cunniff accused her of lying during the Statement. (*See* Doc. 1 at 7–8 (citing Doc. 1-2 at 116:7–121:12, 201:25–202:11).) She asserts that this was contrary to Cunniff's earlier representations that the Government only viewed Sanchez as a witness and not as a target. (*See id.* at 8, 14.)

Sanchez now asserts that the Government will not share possibly exculpatory and

---

[3] Sanchez fails to offer an affidavit in support of her contention that Cunniff agreed in a telephone conversation that Ms. Jones could attend Mrs. Sanchez's testimony. (*See* Doc. 1 at 5.)

corroborating evidence it secured from her former boss (Dan LeGoff) and other coworkers. (*See id.* at 9–10.) She also contends that the parties had an "explicit understanding that she would not be required to return" based on Cunniff's final statement on August 9, 2022. (*See id.* at 1 (discussing Doc. 1-2 at 269:15–17 ("That was my last question.")).) Cunniff attests that "[t]he United States did not agree or represent that Ms. Sanchez would not be issued more than one CID for her testimony." (Doc. 6-1 ¶ 17.)

On June 20, 2023, the United States issued a second CID to Sanchez, authorized by Uballez. (Docs. 6-2–3.) Cunniff asserts that the Government "conducted additional investigation following the August 2022 CID examination" of Sanchez and has provided Sanchez with three additional "sets of documents related to specific transactions at" the Supply Store. (Doc. 6-1 ¶¶ 19–20.) Cunniff explains that "[t]he United States has not commenced litigation related to this investigation[,]" as the relevant claims "are subject to a tolling agreement between the United States and Noble." (*Id.* ¶¶ 22–23.)

## II.    Legal Standard

A CID is an administrative subpoena issued to a person believed to "be in possession, custody, or control of any documentary material or information relevant to a false claims law investigation . . . ." *See* 31 U.S.C. § 3733(a)(1); *see also United States v. Markwood*, 48 F.3d 969, 975 (6th Cir. 1995) (discussing § 3733(a)). "To obtain judicial enforcement of an administrative subpoena, an agency must show that the inquiry is not too indefinite, is reasonably relevant to an investigation which the agency has authority to conduct, and all administrative prerequisites have been met." *Sec. & Exch. Comm'n v. Blackfoot Bituminous, Inc.*, 622 F.2d 512, 514 (10th Cir. 1980) (citing *United States v. Morton Salt Co.*, 338 U.S. 632 (1950)). If the agency makes this threshold showing, a court must enforce the administrative subpoena unless the individual resisting the

subpoena can demonstrate: (1) "that the subpoena is overly broad or burdensome;" *Martin v. Gard*, 811 F. Supp. 616, 620 (D. Kan. 1993) (citing *E.E.O.C. v. Md. Cup Corp.*, 785 F.2d 471, 475–76 (4th Cir.), *cert. denied*, 479 U.S. 815 (1986); *E.E.O.C. v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983), *overruled on other grounds as recognized in Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994)); or (2) "that enforcement would constitute an abuse of the court's process." *Id.* (citing *United States v. Wilson*, 864 F.2d 1219, 1222 (5th Cir.), *cert. denied*, 492 U.S. 918 (1989); *United States v. Powell*, 379 U.S. 48, 58 (1964); *Blackfoot Bituminous*, 622 F.2d at 515). "An abuse of process occurs when the administrative agency is acting for an improper purpose, such as to harass or pressure settlement in a collateral matter, or any other purpose that lacks good faith." *Id.* (citing *Powell*, 379 U.S. at 58; *Director of OTS v. Ernst & Young*, 786 F. Supp. 46, 50 (D.D.C. 1992)).

## III.   The Government has shown that the CID is proper.

The Court looks first at whether the Government has established that the "inquiry is not too indefinite, is reasonably relevant to an investigation which the agency has authority to conduct, and all administrative prerequisites have been met." *Blackfoot Bituminous*, 622 F.2d at 514 (citation omitted).

### A.   The inquiry is sufficiently definite.

The CID was issued pursuant to an investigation under the FCA to determine whether Noble "submitted fake or fraudulent quotes from third parties to the United States and falsely represented the quotes were accurate and complied with contracts governing Noble's operation of" the Supply Store at CAFB. (Doc. 1-1 at 1.) The CID further details that Sanchez is required "to give oral testimony" regarding "additional transactions and topics of interest related to the [Supply Store]" based on investigation performed after her 2022 testimony. (*Id.*) "The Government

also seeks to examine [Sanchez] regarding [her] previous testimony to clarify issues raised in the Government's subsequent investigation." (*Id.*)

Sanchez raises no argument that this inquiry is indefinite. (*See* Docs. 1; 12.)

**B.      The inquiry is reasonably relevant to a proper investigation.**

"The relevancy of information sought by administrative subpoenas is understood to be quite broad." *Martin*, 811 F. Supp. at 621. "If the material requested 'touches a matter under investigation,' then relevancy is established." *Id.* (quoting *Sandsend Fin. Consultants v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989)). "It is enough that the information sought is relevant to any inquiry that the administrative agency is authorized to undertake." *Id.* (citing *Dole v. Trinity Indus., Inc.*, 904 F.2d 867, 872 (3d Cir.), *cert. denied*, 498 U.S. 998 (1990)) (subsequent citation omitted).

Here, the CID reflects that the Government seeks information about whether Noble submitted fraudulent quotes to the United States while operating the Supply Store. (*See* Doc. 1-1 at 1.) The CID outlines the areas of inquiry on which Sanchez will testify, which include her knowledge of operation of the Supply Store, implementation of contracts (including the purchasing process from third-party vendors), and interactions between Noble and third-party vendors and Government personnel. (*Id.* at 4.) The Government submits evidence to demonstrate that Sanchez was intimately involved in and familiar with these areas of inquiry. Sanchez's own testimony demonstrates that through her roles as purchasing agent and store manager, she is knowledgeable about Noble's bid process and with providing operational oversight to Noble. (*See* Doc. 1-2.) Further, Cunniff attests that of 250,662 documents Noble disclosed pursuant to a separate CID, "Sanchez is identified as the custodian for 237,999 . . . ." (Doc. 6-1 ¶ 10.) The Government has carried its burden to show that the CID, and Sanchez's testimony pursuant to the CID, is relevant

to the Noble investigation.

Sanchez challenges the CID on two grounds related to this prong: she argues that the scope of the CID is overly broad and burdensome and that Uballez does not have authority to issue a second CID. (*See* Doc. 1 at 13, 16–18.) The Court will explore those arguments in Section IV below.

### C.   All administrative prerequisites have been met.

The Government outlined the conditions and content requirements it must satisfy to issue a CID according to 31 U.S.C. § 3733(a)(2)(D) and (G). (*See* Doc. 6 at 10–11.) These requirements include information on the "date, time, and place" for the testimony; the identity of the "false claims law investigator who shall conduct the examination and the custodian to whom the transcript of such examination shall be submitted;" a statement "that such attendance and testimony are necessary to the conduct of the investigation;" notice that the person has "the right to be accompanied by an attorney and any other representative"; and a description of "the general purpose for which the demand is being issued and the general nature of the testimony, including the primary areas of inquiry, which will be taken pursuant to the demand." 31 U.S.C. § 3733(a)(2)(D). Subparagraph (a)(2)(G) requires that there be an investigation and that the notification be in writing for any subsequent CID.

Sanchez contends that the Government has not given her "any notification showing that the United States Attorney actually conducted the 'investigation' necessary to make an independent determination that her second appearance was 'necessary,' rather than simply deferred to Mr. Cunniff." (Doc. 12 at 7.) Notwithstanding the fact that Uballez personally signed the second CID, Sanchez fails to establish that the Government owes her such a notification. The administrative prerequisites do not include the right to the kind of notification Sanchez seeks. (*See*

*id.* at 10–11 (arguing that the Government should be required to provide specific details into its investigation and why her follow-up testimony is necessary).)

The Court recommends finding that the Government has met its burden to show that the CID is proper.

**IV.     Sanchez has not demonstrated that the CID should be quashed.**

Sanchez advances a two-pronged argument to support her motion to set aside the CID. First, she contends that the second CID is unjustified and burdensome and is, therefore, an abusive use of the Government's authority and an illegitimate use of the FCA. (Doc. 1 at 10–16.) Second, she argues that the CID does not comply with statutory requirements, as it was issued by Uballez rather than the Attorney General. (*Id.* at 16–19.) The Court examines Sanchez's arguments below but is ultimately unpersuaded by her position.

**A.     Sanchez has not established that the CID is overly broad or burdensome.**

To begin, Sanchez lists a number of objections to the timing and scope of the CID, which will require her to testify about transactions dating back to 2013. (*See* Doc. 1 at 13.) This is due to, Sanchez asserts, Noble's exclusive authority and decision "to grant the Government multiple extensions of the applicable limitations period" for claims brought under the FCA. (*Id.*) Sanchez contends that without Noble's permissive extensions, the Government would be time-barred from bringing stale FCA claims. (*See id.*) She states that "Cunniff has the power to use the threat of an FCA lawsuit to coerce as many extensions of the limitations period as he likes – for as long as he likes – since the mere filing of such a claim would be devastating to a Government contractor like Noble." (*Id.* at 13 n.4.)

In her reply brief, Sanchez argues that "it is difficult to comprehend how *any* further investigation could be 'necessary'" given "the advanced age of the alleged false claims . . . ." (Doc.

12 at 2.) The Court agrees that there is some irony in the United States' reference to "the important governmental interest in the *expeditious* investigation of possible unlawful activity" where this seven-year investigation appears to be possible only through Noble's agreement to extensions of the statute of limitations period. (*See* Doc. 6 at 7 (quoting *Markwood*, 48 F.3d at 979) (emphasis added).) Sanchez points to no authority, however, to support a finding that such extensions negate the legitimacy of an investigation or the necessity of related testimony. Accordingly, Sanchez has not established that enforcement of the CID, considering the age of the investigation, constitutes an abuse of process.

Sanchez next argues that it was her understanding that "Cunniff had a full and fair opportunity to examine [her]" and that he would not need subsequent testimony. (*Id.* at 13–14 (citing Doc. 1-9 at 269:16–17).) As Cunniff responds, however, his statement "was not a promise that Ms. Sanchez would never be examined again—it was simply a statement that the first examination was over . . . ." (Doc. 6 at 23; *see also* Doc. 6-1 ¶ 17.) The Court agrees with Cunniff. Absent some explicit agreement between the parties, the Court is hard-pressed to read Cunniff's final words as a promise not to seek further testimony pursuant to a validly issued CID.[4]

Sanchez disagrees with the Government's strategy of withholding certain documents and then surprising her with the evidence during her first Statement. (*See* Doc. 1 at 14.) The Government argues that Sanchez should not have been surprised by the content of the questions given the statute under which Noble is being investigated and the content of the CID that "put her on explicit notice that the fraud at issue involved transactions at the Supply Store in which she was

---

[4] Sanchez argues in her reply brief that Cunniff guaranteed by email that he would only need her to testify for one day. (*See* Doc. 12 at 14 (citing Doc. 12-2 at 30).) In the referenced email exchange, the attorneys were discussing Sanchez's testimony "on the 9th" pursuant to the *first* CID. The Court can find no reference to or consideration of the possibility of *subsequent* CIDs.

centrally involved." (Doc. 6 at 20 (discussing Doc. 6-6).) More importantly, the Government asserts, Sanchez points to no statutory provision or regulation that requires the Government to provide her with its evidence in advance of a deposition taken pursuant to a CID. (*See id.* at 21.) The Government cites several cases in support. In the District of Utah, for example, the petitioner called the Government's good faith into question where the Government refused to provide written complaints or even to "reveal the nature of the alleged complaints" relevant to its investigation. *Bureau of Consumer Fin. Prot. v. Ctr. for Excellence in Higher Educ.*, No. 2:19-CV-0877 RJS/CMR, 2022 WL 2718245, at *6 (Apr. 20, 2022), *R&R adopted*, 2022 WL 4182301 (D. Utah Sept. 13, 2022). The court held that the petitioner failed to cite "governing authority that obligates the [Government] to share complaints that it receives." *Id.* (citing *Martin*, 811 F. Supp. at 624 ("rejecting the argument that an administrative subpoena must be issued with an accompanying explanation of what the statements are necessary"); *see also S.E.C. v. Sears*, l, No. CIV. 05-728-JE, 2005 WL 5885548, at *4 (D. Or. July 28, 2005) (rejecting an argument that a petitioner had a due process right to review investigatory material prior to a statement). The same is true here: Sanchez fails to offer controlling authority that requires the Government to produce evidence from its investigation to Sanchez in advance of her Statement.

Sanchez contends that she has a Fifth Amendment right "to refuse to be a witness against herself" and that she will exercise that right if she is compelled to appear.  (Doc. 1 at 14 (citing Doc. 1-3 at 12–14).) This is not a reason to set aside the CID. *See Chao v. Potter*, No. 1:05-MC-61, 2005 WL 4839145, at *4 (W.D. Mich. Aug. 10, 2005) ("A blanket objection to the issuance of an administrative subpoena based on the Fifth Amendment privilege against self-incrimination is not a viable defense.") (citing *United States v. Allee*, 888 F.2d 208, 212 (1st Cir. 1989)).

As the Sixth Circuit has recognized, "31 U.S.C. § 3733(h)(7) provides that a person giving

oral testimony in compliance with a false claims CID may not assert his Fifth Amendment privilege against self-incrimination generally, but only on a question-by-question basis." *Markwood*, 48 F.3d at 974 n.6; *see also Ramirez v. Martinez*, No. 20-CV-0824 MV/SMV, 2022 WL 2390487, at *4 (D.N.M. July 1, 2022) (noting that "the right to remain silent must be invoked on a question-by-question basis") (citing *United States v. Jones*, 703 F.2d 473, 477 (10th Cir. 1983) ("The Fifth Amendment must be claimed as to specific questions.")). Sanchez's argument that she will assert her constitutional privilege against self-incrimination is not a reason to grant her petition.[5]

In sum, Sanchez has not demonstrated a valid reason on these bases to set aside the CID. The Court recommends denying her petition on this ground.

### B.      Uballez properly issued the second CID.

Sanchez argues that the CID was not properly issued under the FCA. (*See* Doc. 1 at 16–18.) First, referencing her earlier arguments, she contends that the Government has not shown that her follow-up testimony is "necessary" as required by the FCA. (*See id.* at 17 (discussing 31 U.S.C. § 3733(a)(1)).) The Court disagrees. The CID reflects that the U.S. Attorney requires Sanchez's testimony "to discover [her] knowledge regarding the operations of the [Supply Store]" while working for Noble. (*See* Doc. 6-2 at 3.) Coupled with the evidence submitted that establishes Sanchez's experience in and position at Noble relevant to the investigation, the Court recommends finding that the Government has shown Sanchez's testimony is necessary.

Next, Sanchez argues that Uballez does not have authority to issue a second CID for her

---

[5] Sanchez has sought immunity from the Government in return for answering questions relating to matters for which she would be subject to criminal charges. (*See, e.g.*, Doc. 1-1 at 27.) To date, the Government has not offered immunity but has informed Sanchez that she "is not a criminal target of the Government's investigation . . . ." (*See id.* at 26–28.) The Government's attorneys' emailed assurances, however, amount to "less than a promise there will be no prosecution." *Jones*, 703 F.2d at 478 (citations omitted).

oral testimony under the FCA. (*See* Doc. 1 at 16–18.) Section § 3733(a)(2)(G) provides:

> The Attorney General shall not authorize the issuance under this section of more than one civil investigative demand for oral testimony by the same person unless the person requests otherwise or unless the Attorney General, after investigation, notifies that person in writing that an additional demand for oral testimony is necessary.

31 U.S.C. § 3733(a)(2)(G). Sanchez contends that this provision explicitly restricts the authority to investigate and issue a subsequent CID demand to the Attorney General. (Docs. 1 at 16; 12 at 6.) She contrasts this section with § 3733(a)(1), which specifies that "the Attorney General, or a designee, may" issue a CID pursuant to an FCA investigation. (*See* Doc. 1 at 17.) Because § 3733(a)(1) authorizes the Attorney General to use a designee to authorize an initial CID, but § 3733(a)(2)(G) does not mention the use of a designee, Sanchez believes that *only* the Attorney General has authority to investigate and issue a second CID. (*See id.*; *see also* Doc. 12 at 6.) The Court disagrees.

Section 3733(a) specifies that "[t]he Attorney General may delegate the authority to issue civil investigative demands under *this subsection*." 31 U.S.C. § 3733(a)(1) (emphasis added). In construing this statutory language, the Court notes that the term "subsection" references subsection (a), subsection (b), and so on. *See, e.g.*, 31 U.S.C. § 3733(b) (discussing "[a] CID issued under *subsection (a)*") (emphasis added). The term "paragraph" references paragraphs within each subsection, for example, paragraph (1) in subsection (a). *See, e.g.*, 31 U.S.C. § 3733(a)(2)(A) (discussing a CID "issued under *paragraph (1)*" (emphasis added). And the term "subparagraph" references further divisions of each paragraph, for example, subparagraph (G) of paragraph (2) in subsection (a). (*See, e.g.*, 31 U.S.C. § 3733(j)(2)(B) (discussing relief sought under *subparagraph (A)*") (emphasis added). Accordingly, the Attorney General's ability to delegate authority to issue CID's "under this subsection" includes the issuance of *all* CIDs issued under § 3733(a), including

those issued under § 3733(a)(2)(G).

This result comports with the "broad authority" Congress has given the Attorney General "to delegate the functions assigned to his office to other Department of Justice officials." (*See* Doc. 6 at 13 (citing 28 U.S.C. § 510) ("[t]he Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by *any* other officer, employee, or agency of the Department of Justice of *any* function of the Attorney General").) Relevant here, the Attorney General has delegated "[a]uthority relating to Civil Investigative Demands issued under the [FCA] . . . to United States Attorneys . . . ." 28 C.F.R. § Pt. 0, Subpt. Y, App. § 5. This delegation is not limited to initial CIDs, and Sanchez offers no persuasive argument or authority to suggest otherwise. *See id.*

To the extent Sanchez argues that the statute limits delegation to the *issuance* of CIDs, but not to the *investigation* preceding such issuance (*see* Doc. 12 at 6), the Court disagrees. The Court finds support in the statute's legislative history. The previous version of § 3733(a)(2)(G) explicitly limited the Attorney General's ability to delegate the performance of functions described in that subparagraph. It provided:

> (G) The Attorney General shall not authorize the issuance under this section of more than one civil investigative demand for oral testimony by the same person unless the person requests otherwise or unless the Attorney General, after investigation, notifies that person in writing that an additional demand for oral testimony is necessary. The Attorney General may not, notwithstanding section 510 of title 28, authorize the performance, by any other officer, employee, or agency, of any function vested in the Attorney General under this subparagraph.

31 U.S.C. § 3733(a)(2)(G) (1986). In 2009, Congress struck the last sentence, thus eliminating any restriction on the Attorney General's ability to delegate all functions outlined in subparagraph (a)(2)(G), in 2009. *See* 31 U.S.C. § 3733(a)(2)(G) (1986), as amended by the Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4, 123 Stat. 1617, 1624 (2009).

14

In sum, the Court finds that Uballez had the authority to and properly issued the CID and recommends denying Sanchez's petition on this basis.

**V.      Conclusion**

The Government meets its burden to show that the CID is proper, and Sanchez fails to show that the CID is overly broad or burdensome or that enforcement would be an abuse of process. The Court recommends denying Sanchez's petition and granting the Government's request to enforce the CID.

**IT IS HEREBY RECOMMENDED** that Sanchez's Petition to Set Aside a Second [CID] for her Oral Testimony (Doc. 1) be **DENIED**, and the Government's request to enforce the CID be **GRANTED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE